UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____
                                       )
UNITED STATES OF AMERICA,              )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )          Civil Action No.:   5:17-cv-1364 (FJS/DEP)
                                       )
HONEYWELL INTERNATIONAL INC.           )
                                       )
          and                          )
                                       )
ONONDAGA COUNTY, NEW YORK,             )
                                       )
                    Defendants.        )
_____)

## COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of the

United States and through the undersigned counsel, acting at the request of the Secretary of the

United States Department of Interior ("DOI"), files this complaint and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought pursuant to Section 107(a) of the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.

§ 9607(a), for damages for injury to, destruction of, or loss of natural resources, including the

reasonable costs of assessing such injury, destruction, or loss, resulting from the releases of

hazardous substances at or from defendants' facilities at the Onondaga Lake Superfund Site

("Site") in Syracuse, Onondaga County, New York.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action and over the

parties under 28 U.S.C. §§1331 and 1345, and Sections 107(a) and 113(b) of CERCLA,

42 U.S.C. §§ 9607(a) and 9613(b).

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and

Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases of hazardous substances

and resulting injury and damages that give rise to this claim occurred in this district.

## PARTIES

4.     Plaintiff is a trustee for natural resources at or near the Site under Section 107(f)

of CERCLA, 42 U.S.C. § 9607(f) and 40 C.F.R. § 300.600.

5.     Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation

with its principal place of business in New Jersey.

6.     Defendant Onondaga County ("County") is a municipality organized under the

laws of the State of New York.

## GENERAL ALLEGATIONS

7.     The Site is located in the City of Syracuse and in the Towns of Salina, Geddes,

and Camillus, Onondaga County, New York, and comprises Onondaga Lake, its tributaries, and

the upland facilities that have contributed or are contributing contamination to Onondaga Lake.

8.     Onondaga Lake is located along the northern side of the City of Syracuse in

Onondaga County.  The Lake covers nearly 3,000 acres, and is approximately one mile wide and

4.5 miles long.  The Lake flows to the northwest into the Seneca River, which flows into the

Oswego River, and ultimately ends up in Lake Ontario.  In general, the eastern side of the Lake

is urban and residential, the northern side is dominated by County parkland, wooded areas, and

wetlands, and the western and southern sides consist of industrial properties, including the defendants' facilities.

<u>Honeywell's Successor Liability</u>

9.      In 1881, the Solvay Process Company was founded in 1881 and is the predecessor of Honeywell.

10.      In approximately December 1920, Allied Chemical & Dye Corporation was incorporated.  This corporation was created by the consolidation of the General Chemical Company, Barrett Company, National Aniline and Chemical Company, Solvay Process Company, and the Semet Solvay Company.

11.      In April 1958, Allied Chemical & Dye Corporation became Allied Chemical Corporation.

12.      In April 1981, Allied Chemical Corporation changed its name to Allied Corporation.

13.      In September 1985, Allied Corporation merged with the Signal Companies to become Allied-Signal, Inc.

14.      In 1993, Allied-Signal, Inc. changed its name to AlliedSignal Inc.

15.      In December 1999, a wholly owned subsidiary of AlliedSignal Inc. merged with and into Honeywell Inc., making Honeywell Inc. a wholly-owned subsidiary of AlliedSignal Inc.

16.      In December 1999, AlliedSignal Inc. changed its name to Honeywell International Inc.

17.      Honeywell and its predecessor companies are hereafter referred to collectively as "Honeywell."

Honeywell's Ownership and Operation at the Site

18.     At different time periods between approximately 1884 and approximately 1986, Honeywell owned and/or operated three manufacturing plants and waste disposal areas generated from these manufacturing plants along or adjacent to the western shore of Onondaga Lake. Collectively, these manufacturing plants produced soda ash, benzene, toluene, xylenes, naphthalene, chlorinated benzenes, chlor-alkai products (such as chlorine, sodium hydroxide, and potassium hydroxide), and hydrogen peroxide.

19.     Honeywell currently owns waste disposal areas generated from its manufacturing plants.

20.     During the time Honeywell has owned and/or operated its manufacturing plants and waste disposal areas, hazardous substances, including mercury, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), chlorinated benzenes, dioxins/furans, and benzene, toluene, ethylbenzene, and xylenes (collectively "BTEXs"), have been disposed at one or more of those facilities and released into the environment.

Onondaga County's Ownership and Operation at the Site

21.     Since at least the mid-1950s, Onondaga County has owned and operated a wastewater collection, conveyance, and treatment system (collectively, "Metro"), including the Metropolitan Syracuse Wastewater Treatment Plant ("Metro Plant").  At the Metro Plant, Onondaga County treats wastewater from the collection system and discharges the effluent through an outfall into Onondaga Lake.

22.     During the time Onondaga County has owned and operated Metro, wastewater containing hazardous substances, including mercury, ammonia, and phosphorus, has been

disposed at Metro and released into the environment, including unauthorized overflows and/or discharges of such wastewater at or from Metro.

23.     Since at least the mid-1950s, Onondaga County has accepted hazardous substances, including mercury, from industrial, commercial, medical, and research-related users of its system for transport to its Metro Plant for treatment.

24.     During the time Onondaga County has owned and operated the Metro Plant, effluent containing varying levels of hazardous substances (depending upon the level of treatment received, if any, prior to discharge) has been released from the Metro Plant into Onondaga Lake via an outfall.

Remedial and Natural Resource Damage Assessment Activities Conducted at the Site

25.     From 1970 until 1985, the State of New York banned fishing in Onondaga Lake. Since 1985, fish consumption advisories issued by the New York State Department of Health have been in place for certain fish species in Onondaga Lake due to high levels of mercury, PCBs, and dioxin.

26.     In 1989, the State of New York filed a complaint against Allied-Signal, Inc. (Honeywell is the corporate successor of Allied-Signal) seeking, among other things, to compel the company to cleanup the hazardous substances that it and its predecessor companies had discharged into and around Onondaga Lake, and to pay damages for the destruction of natural resources.  Complaint, State of New York v. Allied-Signal, Inc., No. 3:89-cv-00815 (N.D.N.Y. June 27, 1989), Docket No. 1.

27.     The Site was placed on the National Priorities List ("NPL") on December 16, 1994.  The NPL is a national list of hazardous waste sites posing the greatest threat to health,

welfare, and the environment, and was established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.

28.     In 2005, the New York State Department of Environmental Conservation ("NYSDEC") and the United States Environmental Protection Agency ("EPA") jointly issued the Record of Decision ("ROD") for the Site, calling for the dredging of contaminated sediments and waste from the Lake, placement of an isolation cap over certain shallow and deep portions of the Lake, and the treatment and/or off-site disposal of the most highly contaminated materials with the remaining dredged materials being placed in a consolidated area on top of former wastebeds that historically received ionic process wastes from Honeywell's former operations.

29.     In 2007, this Court approved and entered a federal consent judgment between the State of New York and Honeywell that requires Honeywell to design, implement, and pay for the 2005 ROD.  Consent Decree, No. 3:89-cv-00815 (N.D.N.Y. filed Jan. 4, 2007), ECF No. 194. Remedial activities at the Site are ongoing and nearing completion.

30.     DOI and the Commissioner of Environmental Conservation acting through NYSDEC (collectively, the "Trustees") have engaged in natural resource injury studies, damage assessment, and restoration planning relating to the Site since the 1990s.  In May 2009, the Trustees and Honeywell entered into a cooperative assessment and funding agreement to undertake a cooperative natural resource damage assessment funded by Honeywell.

31.     Investigations conducted by EPA and NYSDEC and an assessment conducted by the Trustees have detected hazardous substances in the sediments, soils, groundwater, and waters of the Site, including, but not limited to, mercury, PCBs, PAHs, chlorinated benzenes, BTEXs, dioxins/furans, ammonia, and phosphorus.

32.     The Trustees have performed a Habitat Equivalency Analysis ("HEA") and a random utility maximization ("RUM") model at the Site to determine the costs of restoration needed to compensate for natural resource injury and recreational fishing loss due to releases of hazardous substances from defendants' facilities.  The HEA determined that sediment, fish, birds, amphibians, and mammals sustained ecological injuries from the hazardous substances released from the facilities.  The RUM established the type and number of fishing trips lost as a result of the releases of hazardous substances from the facilities.  These claims are joint by the Trustees.

33.     In August 2017, the Trustees issued its final Onondaga Lake Natural Resource Damage Assessment Restoration Plan and Environmental Assessment, which describes the natural resource injuries and associated losses, outlines the restoration projects to compensate for such injuries and losses at the Site, and provides a responsiveness summary to oral and written comments received from the public on the draft plan during a 90-day public comment period, which included four public meetings and one public hearing held in different locations in Syracuse during the Spring 2017.

34.     To date, the United States has incurred at least $2.3 million in assessment costs in connection with the Site.  Honeywell has fully reimbursed the United States for these assessment costs pursuant to the cooperative assessment and funding agreement.  The United States will continue to incur damage assessment costs as a result of the release or threatened release of hazardous substances at the Site.

## **CLAIM FOR RELIEF**

35.     The foregoing paragraphs are realleged and incorporated by reference.

36.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section

(1)     the owner and operator of a vessel or a facility,

(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . . [and]

(4)     any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities ... selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . .

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release ..."

37.     Each defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. ¶ 9601(21).

38.     Each of the industrial plants and facilities referred to in Paragraphs 18 and 21 is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. ¶ 9601(9).

39.     Defendant Honeywell is an owner of a facility within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. ¶ 9607(a)(1).

40.     Defendant County is an owner and operator of a facility within the meaning of the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. ¶ 9607(a)(1).

41.      Each defendant or its predecessor was an owner and/or operator of a facility at the time of disposal of hazardous substances at the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. ¶ 9607(a)(2).

42.     Defendant County is a person who has accepted hazardous substances for transport to its disposal or treatment facilities it selected within the meaning of Section 107(a)(4) of CERCLA, 42 U.S.C. ¶ 9607(a)(4).

43.    Mercury, ammonia, phosphorus, PCBs, PAHs, chlorinated benzenes, dioxins/furans, and BTEXs are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. ¶ 9601(14).

44.    At all times relevant to this action, there have been "releases" and "disposals" of hazardous substances at and from the defendants' facilities into the environment at the Site, within the meaning of Sections 101(22), 101(29), and 107(a) of CERCLA, 42 U.S.C. ¶¶ 9601(22), 9601(29), and 9607(a).

45.    Injury to, destruction of, or loss of "natural resources" under the trusteeship of the plaintiff, including, fish, birds, amphibians, reptiles, bats, sediment, and invertebrates, resulted, and continue to result, from releases of hazardous substances at and from the defendants' facilities at the Site within the meanings of Sections 101(16) and 107(a) of CERCLA, 42 U.S.C. ¶¶ 9601(16) and 9607(a).

46.    The United States will continue to incur costs in assessing the injury to, destruction of, or loss of natural resources for which it is trustee resulting from the releases of hazardous substances at and from defendants' facilities at the Site.

47.    The defendants are jointly and severally liable to the United States for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the releases of hazardous substances at or from defendants' facilities at the Site, pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C).

48.    The United States is also entitled to a declaratory judgment that the defendants are jointly and severally liable to the United States, under Section 107(a) of CERCLA, 42 U.S.C.

§ 9607(a), for further costs and damages to be incurred by the United States regarding the Site, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

## **REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

1.      Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding defendants jointly and severally liable for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from the releases of hazardous substances at or from defendants' facilities at the Site;

2.      Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), regarding defendants' joint and several liability for damages that will be binding on any subsequent action or actions to recover further damages regarding the Site; and

3.      Award the United States such other relief as this Court may deem appropriate.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


*/s/ Kathryn C. Macdonald*
Kathryn C. Macdonald, N.D.N.Y. Bar Roll No.: 520952
Senior Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
(202) 353-7397
Kathryn.macdonald@usdoj.gov

GRANT C. JAQUITH
Acting United States Attorney
Northern District of New York

Thomas Spina
Assistant United States Attorney
U.S. Attorney's Office
Northern District of New York
James Foley Building
445 Broadway, Room 218
Albany, New York 12207-2924
(518) 431-0247


OF COUNSEL:

MARK BARASH
Senior Attorney
Office of the Solicitor
U.S. Department of Interior
One Gateway Center, Suite 612
Newton, Massachusetts 02458-2802